TERZIAN *v.* WADHAM.

1. MORTGAGES—ASSIGNMENTS—FRAUD—BONA FIDE HOLDER.

The assignee of a mortgage who knew that it was given for the purpose of enabling the mortgagee to raise money and complete an apartment house for the mortgagors, and who assisted the mortgagee in avoiding his plain duty under the contract, cannot be said to be a *bona fide* holder of the mortgage and notes.[1]

2. CANCELLATION OF INSTRUMENTS—MORTGAGES—FRAUD.

In a suit for the cancellation of a mortgage given for the purpose of retiring a former mortgage and completing an unfinished apartment house, where the record shows

[1] Mortgages, 27 Cyc. p. 1323.

that the mortgagee has been more than recreant to his trust and has defaulted in his contract and that the assignee of the mortgage has assisted the mortgagee in avoiding his plain duty in regard thereto, the decree of the court below dismissing the bill is reversed, on appeal, and one entered in the Supreme Court requiring performance of the contract by a certain time as a condition to allowing the mortgage to stand; if not so performed the mortgage to be canceled.[2]

Appeal from Wayne; Merriam (De Witt H.), J. Submitted April 7, 1926. (Docket No. 39.) Decided October 4, 1926.

Bill by Karl Terzian and others against George B. Wadham, Jr., and others for the cancellation of a mortgage. From a decree dismissing the bill, plaintiffs appeal. Reversed, and decree entered for plaintiffs.

*J. H. M. Alexander,* for plaintiffs.

*James W. Thomas,* for defendants.

BIRD, C. J.   This controversy grows out of a building contract. The plaintiffs ask that the third mortgage given on their apartment to defendant Wadham, who was the contractor, be canceled. Relief was denied them in the trial court and they have appealed.

Plaintiffs were the owners of a lot at the corner of Maplewood and Northfield avenues in the city of Detroit. They were desirous of erecting thereon an apartment. Defendant George B. Wadham, Jr., a contractor, learned of this and called upon them and talked it over. The talk resulted in a written agreement, in which Wadham agreed, in consideration of $66,000, to erect the apartment for them. The consideration was to be paid from two mortgages running to the United States Mortgage Bond Company, aggregating $50,000, and the balance was to be paid by

[2]Appeal and Error, 4 C. J. § 3222.

plaintiffs.    In the event that plaintiffs did not get their money, as expected, then Wadham agreed to furnish the excess over what was received from the bonding company for use in completing the apartment.

This course was pursued until some time in June, 1924, when the bonding company advised it had a balance of something upwards of $7,000 in its hands which it was going to retain until the apartment progressed to the point where that sum would finish it. In consequence of this position by the bonding company the work on the apartment stopped.

Wadham, after a time, came to plaintiffs and said they would have to give him another mortgage—a third mortgage—or else he could not finish the apartment. The negotiations finally resulted in plaintiffs giving a third mortgage for $39,000, made up as follows: Twenty-four thousand dollars, plus $5,000 for discounting the mortgage, for finishing the apartment, and $10,000 with which to pay the second mortgage to the United States Mortgage Bond Company.    In consideration of this mortgage Wadham agreed:

"And it is further agreed by and between all of the parties hereto that said payments on said second mortgage to said second party will not begin until December 1, 1924, which is sixty days after the completion of said building, which is to be completed October 1, 1924, *and it is expressly agreed that said second party will fully complete said building in every detail, according to the plans and specifications and the contract upon the execution of said second mortgage without further payment of any sum of money whatsoever from said first parties.*"

After getting the mortgage very little progress was made with the work.    Instead of using the avails of the mortgage to finish the apartment, Wadham claims he sold and assigned the mortgage to another real estate man, Charles A. McGregor.    McGregor claims he advanced certain money to Wadham, but his cross-

examination failed to disclose how much he had advanced. Neither did his bank account disclose what amount, if any, he had advanced to Wadham. Wadham could not tell how much was advanced by McGregor. McGregor claims he deeded certain real estate to Wadham in part payment of the mortgage, but the details of that are wanting. Later, in his testimony, McGregor said he canceled that agreement. It appears, however, that McGregor never gave Wadham possession of it.

After making two contracts with Wadham in which he agreed to finish the apartment it is not finished yet. Plaintiffs have practically nothing for the $39,000 mortgage. The apartment is not finished. The $10,000 second mortgage to the United States Mortgage Bond Company is not paid, as agreed, and the only excuse Wadham makes is that he has not got the money to finish it.

The conduct of Wadham and McGregor in dealing with this mortgage has resulted in a fraud upon plaintiffs. McGregor knew the purpose for which the mortgage was given by plaintiffs and he knew that in consideration of said mortgage Wadham agreed to finish the apartment because he examined the second contract between plaintiffs and Wadham, and yet, with this knowledge, the mortgage has been used to enable them to make other deals and speculate in real estate. Wadham has been more than recreant to his trust, and McGregor has assisted him in avoiding his plain contract duty. McGregor is in no sense a *bona fide* holder of the notes and mortgage.

The record in the case is very large and there is much immaterial matter in it, but notwithstanding this two things stand out prominently: Wadham was employed and paid to construct an apartment house, and he has not done it, and the testimony convinces us that McGregor has knowingly assisted him in his de-

fault.  Wadham treats the matter of default very lightly.  The contract which he made means something, whether he has gained or lost, and he should be made to comply with it.

From the estimate of the architect we take it that it will require $6,000 or $7,000 beside the amount in the hands of the bonding company to finish the apartment.  If the apartment is not finished at this date Wadham will be given until January 1, 1927, to complete it in accordance with his second contract, and make a delivery to plaintiffs, free and clear of all liens, except such as may have been placed thereon by plaintiffs.  In the event that this is done the third mortgage will stand.  In the event that said apartment is not finished in accordance with the contract by January 1, 1927, the so-called third mortgage shall be canceled and discharged of record.  If the apartment has been finished by plaintiffs, by making payment to them of the cost of completion, according to the contract, the mortgage may stand.  If this is not paid by January 1, 1927, the mortgage shall be canceled and discharged of record.  The injunction may continue in force until the matter is adjusted, or until January 1, 1927.

The decree of the lower court is reversed, and plaintiffs will recover their costs of both courts.

SHARPE, SNOW, STEERE, FELLOWS, WIEST, CLARK, and McDONALD, JJ., concurred.